IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JERALD KEITH SAWYERS,**

    **Plaintiff,**

vs.                                                  **CIVIL ACTION NO. 3:21-CV-00005**

**KILOLO KIJAKAZI,
ACTING COMMISSIONER
OF SOCIAL SECURITY,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered January 6, 2021 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Memorandum in Support for Plaintiff's Motion for Judgement on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 14, 15)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (ECF No. 14), **GRANT** Defendant's request to affirm the decision of

1

the Commissioner (ECF No. 15); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Jerald Keith Sawyers (hereinafter referred to as "Claimant"), protectively filed his applications for Titles II and XVI benefits on November 16, 2018 alleging that his disability began April 1, 2014, which he amended to February 1, 2018, because of degenerative disc disease, bilateral carpal tunnel syndrome, PTSD, anxiety, depression, high cholesterol, sciatic nerve pain, neuropathy, low back pain as well as prostate problems. (Tr. at 226-229, 230-243, 254, 275) His claims were initially denied on April 25, 2019 (Tr. at 84, 99) and again upon reconsideration on September 11, 2019 (Tr. at 167-173, 174-180). Thereafter, Claimant filed a written request for hearing on October 16, 2019. (Tr. at 181-182)

An administrative hearing was held on April 27, 2020 before the Honorable Maria Hodges, Administrative Law Judge ("ALJ"). (Tr. at 33-65) On May 7, 2020, the ALJ entered an unfavorable decision. (Tr. at 12-32) On June 19, 2020, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 222-224) The ALJ's decision became the final decision of the Commissioner on November 4, 2020 when the Appeals Council denied Claimant's Request. (Tr. at 1-6)

On January 5, 2021, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 9, 10) Subsequently, Claimant filed a Memorandum in Support for Plaintiff's Motion for Judgement on the Pleadings (ECF No. 14); in response, the Commissioner

filed a Brief in Support of Defendant's Decision. (ECF No. 15) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 50 years old as of the amended alleged onset date and considered a "person closely approaching advanced age" throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(d), 416.963(d). (Tr. at 26) Claimant has a high school education and previously worked as a maintenance repairer and mechanic, which the vocational expert classified as medium and skilled (Tr. at Id.).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does,

the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). Those Sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

   (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
   (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.
   (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

  Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

  Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

  Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings

and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through September 30, 2019. (Tr. at 17, Finding No. 1) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the amended alleged onset date of February 1, 2018. (Id., Finding No. 2) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: degenerative disc disease and carpal tunnel syndrome. (Tr. at 18, Finding No. 3)

At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 20, Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except Claimant:

> can frequently push and pull with the right upper extremity; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance and crawl; frequently stoop, kneel, and crouch; frequently handle, finger, and feel with the right upper extremity; should avoid more than occasional exposure to wetness, vibration, unprotected heights, and moving machinery; he can never work in extreme cold; and he must be able to alternate between sitting and standing and walking at 30 minute intervals.

(Tr. at 21, Finding No. 5)

At step four, the ALJ found Claimant was unable to perform any past relevant work. (Tr. at 26, Finding No. 6) At the fifth step, the ALJ determined that in addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience, and RFC indicated that there are jobs that exist in significant numbers in the national economy that Claimant can perform, such as kitchen aide and garment sorter. (Tr. at 26-27, Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under a disability from February 1, 2018 through the date of the decision. (Tr. at 27, Finding No. 11)

**Claimant's Challenges to the Commissioner's Decision**

Claimant alleges the ALJ failed to abide by the Fourth Circuit's guidance from Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015) regarding Social Security Ruling ("SSR") 00-4p because she did not resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") where the vocational expert indicated parts of his opinion were outside the bounds of the DOT without further exploration. (ECF No. 14 at 7) Claimant asks the Court to reverse for an award of benefits, or for remand to correct this error. (Id. at 7-8)

In response, the Commissioner contends there was no apparent conflict between the vocational expert's testimony and the DOT for the ALJ to reconcile, plus the vocational expert testified his opinion was consistent with the DOT (ECF No. 15 at 7-8). Further, Claimant neither raised or identified any conflicts during the hearing, nor does he specify any textual basis for the conflict between the RFC and the DOT job descriptions; the ALJ permissibly relied on the vocational expert's testimony (Id. at 8-11). The Commissioner asserts that the final decision is

7

supported by substantial evidence and asks this Court to affirm. (Id. at 11)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

**The Administrative Hearing:**

Claimant Testimony:

Claimant testified that since his alleged disability date of February 1, 2018, he had only done "minor side jobs", including helping his mother-in-law by assisting with rewiring a house. (Tr. at 41-42) He wears wrist braces at night and from time to time receives injections in his spine for his back pain (Tr. at 45). He stated he was able to lift and carry about twenty pounds (Tr. at 46). He reported doing a little bit of clean up in the yard, and collecting trash around the house (Tr. at 50). Prior to the coronavirus pandemic, Claimant went to Sunday School and church, and although he is in a lot of pain after the service, he does not get up and walk around like other people do (Tr. at 51). Claimant endorsed dropping things almost every day and has his wife button his shirts (Tr. at 55).

Vocational Expert Testimony:

The vocational expert testified that a hypothetical individual with Claimant's age, education and vocational profile and the controlling light RFC as determined by the ALJ, *supra*, could not perform his past relevant work (Tr. at 58-59). The vocational expert testified that there

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. Since the appeal only concerns the final step in the sequential evaluation process, and Claimant states that his medical history is not immediately relevant to the issue on appeal (ECF No. 14 at 2), the undersigned does not summarize same for purposes herein.

were other light jobs the individual could perform, and stated: "I'm going to reduce the numbers I might need to give you, because some of these – and the DOT will say a little more use of the hands, and so I'm reducing it for the jobs that, in my opinion, do not – that fit with your profile." (Tr. at 59) The vocational expert then asked the ALJ if she understood what he had stated, to which the ALJ responded, "yes." (Id.) The vocational expert then identified the jobs of cleaner, kitchen aide, and garment sorter (Id.).

In response to questioning from Claimant's counsel, the vocational expert confirmed that the jobs he identified were already reduced by fifty percent to accommodate the alternating sitting and standing option (Tr. at 60).

Finally, the vocational expert testified that his testimony was consistent with the DOT and the accompanying documentation, and that "some of those things . . . are from my education, experience, and knowledge." (Tr. at 62-63)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

9

is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

DOT Consistency at the Fifth Step of Sequential Evaluation Process:

As stated *supra*, at the final step in the sequential evaluation process, the ALJ determined that Claimant could perform light work with additional limitations, with representative jobs including kitchen aide and garment sorter, according to the vocational expert's testimony. (Tr. at 27) The ALJ then determined that pursuant to SSR 00-4p, the vocational expert's testimony was consistent with the information contained in the DOT, "with the exception of the limitations cited in the [RFC] that the DOT does not consider", and that "[t]he vocational expert testified that he utilized his education and experience of working as a rehabilitation specialist to provide information regarding a sit, stand, and walk limitation and limitations to one arm." (Id.)

> The Fourth Circuit has held "Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..." Pearson v. Colvin, 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. Radford, 734 F.3d at 296; see also Brown v. Colvin, 639 Fed. App'x. 921, 923, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"). And, as the Fourth Circuit has repeatedly made clear, the ALJ must provide a sufficient explanation of his findings to allow for meaningful appellate review. See Mascio, 780 F.3d at 637 ("Because we are left to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to

>perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding that without an adequate explanation, "it is simply impossible to tell whether there was substantial evidence to support the determination").

See Cunningham v. Berryhill, No. 3:16-cv-02525, 2017 WL 1259587 (S.D.W. Va. Mar. 31, 2017) (Tinsley, M.J.). The pertinent law is clear that where there is an apparent conflict between a vocational expert's testimony and the DOT, the adjudicator has an affirmative responsibility to ask about the conflict between the testimony and the information provided in the DOT. Policy Interpretation Ruling: Titles II And XVI: Use Of Vocational Expert And Vocational Specialist Evidence, And Other Reliable Occupational Information In Disability Decisions, SSR 00-4p, 2000 WL 1898704, at *4; see also Keller v. Berryhill, 754 Fed. App'x. 193, 199 (4th Cir. 2018).

There is no question that it remains the exclusive duty of the ALJ to identify any apparent conflicts in the evidence and to resolve them. At the fifth step of the sequential evaluation process, the burden of proof shifts to the ALJ because "[i]n order to support a finding that you are not disabled at this fifth step . . . we are responsible for providing evidence that demonstrates that other work exists . . . that you can do, given your residual functional capacity and vocational factors." See 20 C.F.R. §§ 404.1560(c)(2) 416.960(c)(2). In determining the existence of jobs that a claimant can perform, the ALJ will consider both the DOT and a vocational expert's testimony. Id. §§ 404.1566, 416.966. Indeed, SSR 00-4p expressly allows the ALJ to rely upon a vocational expert's "experience in job placement or career counseling" among reasonable bases for relying on the evidence from the vocational experts rather than the DOT. See SSR 00-4p, 2000 WL 1898704, at *2.

For starters, it is noted that the "kitchen aide" job (DOT #311.677-010) is described as:

> Carries trays from food counters to tables for cafeteria patrons. Carries dirty dishes to kitchen. Wipes tables and seats with dampened cloth. Sets tables with clean linens, sugar bowl, and condiments. May wrap clean silver in napkins. May circulate among diners and serve coffee and be designated Coffee Server, Cafeteria or Restaurant (hotel & rest.).

See DICOT 311.677-010 (G.P.O.), 1991 WL 672694. The DOT further provides that the job entails frequent handling, frequent reaching, occasional fingering, occasional stooping, but no climbing, balancing, kneeling, crouching, crawling, feeling, or any of the environmental limitations. Id. The "garment sorter" job (DOT #222.687-014) is described as follows:

> Sorts finished garments, such as shirts, dresses, and pajamas, according to lot and size numbers recorded on tags and labels attached to garments. May fold and package garments in boxes and bags. May iron garments prior to folding [PRESSER, HAND (any industry)]. May be designated according to garment sorted as Shirt Sorter (garment).

See DICOT 222.687-014 (G.P.O.), 1991 WL 672131. The DOT further provides that this job entails frequent reaching, frequent handling, occasional fingering, but no climbing, balancing, stooping, kneeling, crouching, crawling, feeling, or any of the environmental limitations. Id. Clearly, these two jobs do not conflict with the controlling RFC, or at bottom, do not indicate any "apparent" conflicts. See, e.g., Critchley v. Colvin, No. 5:15–CV–08288, 2016 WL 3030211, at *8 (S.D.W. Va. May 4, 2016), recommendation adopted, 2016 WL 3033763 (S.D.W. Va. May 26, 2016) (finding ALJ's failure to question vocational expert about potential conflicts harmless where "no conflict, actual or apparent," existed).

It is notable that the Regulations specifically provide:

We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether –
   (1) Work exists in the immediate area in which you live;
   (2) A specific job vacancy exists for you; or

  (3) You would be hired if you applied for work.

See 20 C.F.R. §§ 404.1566(a)(1)-(3), 416.966(a)(1)-(3). Additionally, "[w]ork exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." See Id. §§404.1566(b), 416.966(b) (emphasis added). Clearly, at the fifth step, the ALJ found that the vocational expert identified at least "one" occupation Claimant could still perform.

  To the extent Claimant contends that the vocational expert's reduction of the number of jobs due to some ostensible, yet unidentified or unspecified, conflict between his testimony and the DOT, it is noted that the cases within this Circuit are sparse on that particular issue. However, another court determined that an ALJ properly inquired as to whether there were any conflicts between a vocational expert's testimony and the DOT where there was no apparent conflict, thus, the ALJ was not obligated to independently investigate further. See Acevedo ex rel. Acevedo v. Colvin, 2014 WL 197738, at *5 (D. S.C. 2014) (District Court declined to adopt Magistrate Judge's recommendation for remand when ALJ relied upon vocational expert testimony reducing number of jobs by 50% and then an additional 30% based on controlling RFC where vocational expert affirmed her testimony was consistent with DOT, SCO[2] and Department of Labor publications)[3]; see also, Newman v. Saul, 474 F.Supp.3d 345, 365 (D. Mass. 2020) (vocational expert's invocation of her experience was sufficient reasonable explanation for reduction from

---

[2] Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles.
[3] This case is also similar to the matter at bar to the extent that the plaintiff's attorney did not object to the vocational expert's testimony or identify any discrepancies between her testimony and the DOT and SCO.

DOT job numbers, permitting hearing officer to rely on her testimony in making RFC finding).[4]

Accordingly, the undersigned **FINDS** that the ALJ met her burden of proof at the fifth step of the sequential evaluation and is supported by substantial evidence. In sum, the undersigned **FINDS** the ALJ's unfavorable decision is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for remand (ECF No. 14), **GRANT** the Defendant's request to affirm the decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

---

[4] Notably, the District Court of Massachusetts deemed its holding complaint with the Supreme Court's determination in Biestek v. Berryhill, 139 S.Ct. 1148, 1155 (2019) that a hearing officer could rely upon the testimony of a vocational expert even though she refused to supply underlying data to support her conclusion, as the testimony itself constituted "substantial evidence." Id.; see e.g., Ford v. Saul, 950 F.3d 1141, 1160 (9th Cir. 2020) (quoting Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017) ("[I]n the absence of any contrary evidence, a [vocational expert's] testimony is one type of job information that is regarded as inherently reliable, thus, there is no need for an ALJ to assess its reliability."); Welsh v. Colvin, 765 F.3d 926, 930 (8th Cir. 2014) (citing Jones v. Astrue, 619 F.3d 963 (8th Cir. 2010) (vocational expert reduced estimate of the number of jobs based on handling restrictions in RFC otherwise not provided for in DOT for those jobs determined to be a reasonable basis for ALJ's conclusions).

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 30, 2021.



Omar J. Aboulhosn
United States Magistrate Judge